UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | Civil Action No. 5: 21-103-DCR |
| Plaintiff, | ) ) | |
| V. | ) ) | |
| CENTRAL KENTUCKY LODGING, INC., et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Cincinnati Specialty Underwriters Insurance Company ("Cincinnati Specialty") filed this action for declaratory relief concerning its rights and obligations under two insurance policies that may cover the conduct of several defendants in *Estate of Rima A. Abbas, et al. v. ABDCO, LLC d/b/a/ Horseshoes KY Grill & Saloon, et al.*, No. 19-CI-01315, a case pending in Fayette Circuit Court ("the State Court Action"). [*See* Record No. 1.] Cincinnati Specialty named these parties, as well as the Estates of Rima A. Abbas, Issam Ali Abbas, Ali Joseph Abbas, Isabella Ava Abbas, and Giselle Layla Abbas (collectively, "the Abbas Estates" or "the Estates"), who brought the State Court Action, as defendants in this declaratory judgment action. [*Id.*]

The Abbas Estates have moved to dismiss this case, arguing that the factors set forth in *Grand Trunk W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), counsel against the exercise of jurisdiction. It also contends that Cincinnati Specialty has waived its right to bring a declaratory judgment action in this Court. [Record Nos. 18 and 18-1] The

- 1 -

defendant's motion will be granted because the *Grand Trunk* factors weigh against this Court exercising jurisdiction.

## I.

An intoxicated Joey Lee Bailey drove his truck southbound in the northbound lane of Interstate 75 for several miles during the early morning hours of January 6, 2019. His actions resulted in a head-on collision with a vehicle carrying Dr. Rima A. Abbas, Issam Ali Abbas, Ali Joseph Abbas, Isabella Ava Abbas, and Giselle Layla Abbas. [Record No. 18-2, ¶¶ 138-45] Bailey and the Abbas family all were killed in the collision. [*Id.* at ¶¶ 142-43.] A forensic toxicology report revealed that Bailey had a blood alcohol content of .306% and also had Alprazolam in his system. [*Id.* at ¶ 144.]

The Abbas Estates, plaintiffs in the State Court Action, alleged that Bailey had been served alcoholic beverages at several establishments on the evening of the incident, including: (1) ABDCO, LLC d/b/a Horseshoes KY Grill & Saloon ("ABDCO") in Lexington, Kentucky; (2) a Roosters restaurant franchise in Georgetown, Kentucky; and, potentially, (3) JIMALOU, Inc. d/b/a Rose & Jim's Bar in Georgetown, Kentucky. [Record No. 18-2, ¶¶ 97-137]

The Estates claim that Brian Dodge was the sole LLC manager and member of ABDCO when Bailey was served there. [*See id.* at ¶ 46.] Dodge also allegedly owned Central Kentucky Lodging, Inc. (which operated a Days Inn in the building where ABDCO was located on North Broadway in Lexington) and leased a portion of the premises to ABDCO. [*Id.* at ¶¶ 47-51, 147.] The Abbas Estates asserted that "the assets, management, and operations" of both ABDCO and Central Kentucky Lodging were "were so comingled with [Brian Dodge] personally" that these entities functioned as alter egos of their owner. [*Id.* at ¶¶ 64, 66.] Additionally, Nathan Dodge (Brian's nephew) "was a primary managing employee of" both

ABDCO and Central Kentucky Lodging according to the Estates.  [*Id.* at ¶¶ 53-54, 58-59.]  It was further alleged that Brian and Nathan Dodge "engaged in the free exchange of assets and joint decision-making with regard to [Central Kentucky Lodging] and ABDCO's respective operations in order to maximize the profitability of each of these businesses."  [*Id.* at ¶ 63.]

ABDCO, through Brian Dodge, entered into an April 9, 2019 administrative plea agreement for a violation of Kentucky Revised Statutes ("KRS") § 244.080(2) relating to the bar's service of Bailey in a case before Office of Lexington-Fayette Urban County Government Alcoholic Beverage Control.  [*See* Record No. 18-3.]  ABDCO submitted to a $10,000.00 fine and a ten-day suspension of alcohol sales in its administrative guilty plea.  [Record No. 18-3]

The Abbas Estates filed the State Court Action on April 9, 2019, naming as a defendant, *inter alia*, Central Kentucky Lodging for alleged "violations of KRS § 413.214 (The Kentucky Dram Shop Act); violations of KRS § 244.080, alleging negligence per se; and violations of Fayette County Ordinance 282-2005 § 3-28."  [Record No. 1-4, pp. 2-3]  Central Kentucky Lodging maintained a commercial general liability policy ("the General Policy") with a coverage limit of $1,000,000.00 per occurrence and commercial excess liability policy ("the Excess Policy") with a coverage limit of $2,000,000.00 per occurrence with Cincinnati Specialty Underwriters Insurance Co. ("Cincinnati Specialty"), the plaintiff in this action.  [*See* Record No. 1-4, p. 1; *see also* Record Nos. 1-2 and 1-3.]

Cincinnati Specialty, by counsel, sent a May 15, 2019 reservation of rights letter to Brian Dodge, which noted that the Estates' complaint alleged that: (1) Central Kentucky Lodging and ABDCO were a joint venture or single business enterprise sharing profits, management, and expenses; (2) Central Kentucky Lodging engaged in a "continuing course of grossly negligent, reckless and/or wanton conduct, as indicated by at least one other instance

- 3 -

of over service that resulted in death[] within the last five years"; and (3) as a result, the Estates are entitled to punitive damages.  [Record No. 1-4, p. 3]  The letter stated that an endorsement of the General Policy precluded coverage for bodily injuries for which Central Kentucky Lodging "may be held liable by reason of causing or contributing to the intoxication of any person or the furnishing of alcoholic beverages to a person . . . under the influence of alcohol . . . ."  [*Id.* (alterations in original).]  According to the letter, this provision may be applicable inasmuch as the Estates claimed that Central Kentucky Lodging and ABDCO were a joint venture, which could render Central Kentucky Lodging liable for ABDCO's service of Bailey. [*Id.* at 3-4.]  The letter continued by stating that the commercial general liability and commercial excess liability policies excluded coverage for: (1) expected or intended damages, *i.e.*, those damages that are "not accidental"; (2) "any claim of indemnification for punitive or exemplary damages"; and (3) any damages in excess of the policies' coverage limits.  [*Id.* at pp. 3-4.]

Having noted these issues, counsel for Cincinnati Specialty wrote that the insurer would provide defense counsel for Central Kentucky Lodging, subject to a "full and complete reservation of all rights[,] respectfully reserv[ing] the right to deny coverage for this Lawsuit" as well as the "right[s] to withdraw this defense and to deny any duty to indemnify" the insured and the right to "seek recovery of attorney fees expended if it is [later] determined that [Cincinnati Specialty] has no duty to defend."  [*Id.* at 4.]  Importantly, the May 15, 2019 letter also provided:

> Please note that CSU [*i.e.*, Cincinnati Specialty] reserves its right to file a declaratory judgment action requesting that the Court determine whether, and to what extent, it is required to defend and/or indemnify Central [*i.e.*, Central Kentucky Lodging], and to intervene in this Lawsuit in order to request that the Court to [*sic*] address CSU's duty to defend and/or indemnify Central and to

allocate any verdict between covered and non-covered losses.  Please be advised that this reservation of rights and/or possible legal actions may create a conflict of interest between CSU and Central.

[*Id.* at 4.]

The Abbas Estates allege that a different entity, Kennedy's Hospitality, LLC, subsequently filed its articles of organization on May 28, 2019.  [Record No. 18-2, ¶ 77]  This LLC purportedly received all of ABDCO's assets and continues to operate the bar once known as Horseshoes KY Grill & Saloon under a different unidentified name.  [*See id.* at ¶ 80.]  The operative Fifth Amended Complaint in the State Court Action does not identify the members or managers of this LLC.  [*See id.* at ¶¶ 76-82.]

The Abbas Estates also assert that Advanced Lodging Solutions, LLC filed its articles of organization on July 18, 2019.  [Record No. 18-2, ¶ 70]  This LLC, whose sole member and manager is Nathan Dodge, allegedly "received substantially all of [Central Kentucky Lodging's] hotel-related assets and now continues the operation of the [Days Inn] hotel once belonging to [Central Kentucky Lodging]."  [*Id.* at ¶ 74.]  Specifically, Central Kentucky Lodging subleased the hotel to Advanced Lodging Solutions on August 15, 2019, and also "transferred property rights to . . . the fixtures, improvements and personal property associated with the hotel, the operation of its business of 176 hotel rooms, and its franchise agreement with Days Inn Worldwide, Inc."  [*Id.* at ¶¶ 152, 155.]  The Estates contend that Brian Dodge maintained significant control over the property, going so far as to sign a new franchise agreement on Central Kentucky Lodging's behalf with Days Inn Worldwide on August 27, 2019, after the hotel itself had been subleased to Advanced Lodging Solutions.  [*Id.* at ¶¶ 159, 161.]

The Abbas Estates allege that the transfers of assets from ABDCO to Kennedy's Hospitality and from Central Kentucky Lodging to Advanced Lodging Solutions were made "at least partially for the purpose of evading creditors," including the Estates.  [*Id.* at ¶¶ 82-83.] They further assert that the transfers were made without adequate consideration, were concealed by Central Kentucky Lodging and ABDCO, and left those entities undercapitalized or insolvent "taking into account their substantial anticipated debts with regard the Plaintiffs' claims."  [*Id.* at ¶¶ 161-62.]

The Third Amended Complaint in the State Court Action alleged claims against Brian and Nathan Dodge.  [*See* Record Nos. 1-5 and 1-6.]  Cincinnati Specialty, by counsel, sent July 6, 2020, reservation of rights letters to Brian Dodge and Craig Reinhardt, counsel for Nathan Dodge.  [Record Nos. 1-5 and 1-6]

The letter to Brian Dodge incorporated by reference the May 15, 2019, reservation of rights letter and stated that Cincinnati Specialty would provide a defense for Dodge as well as Central Kentucky Lodging.  [Record No. 1-5, p. 2]  The letter clarified that a defense for Brian Dodge would be provided, insofar as claims were alleged against him for "acts within the scope of [] employment by Central [Kentucky Lodging] or while performing duties related to the conduct of Central [Kentucky Lodging's] business" under the "Who is an Insured" provisions of the two Central Kentucky Lodging insurance policies.  [*Id.* at 4.]  It declined to defend Brian Dodge insofar as the Third Amended Complaint asserted claims against him in his "capacity as personnel of ABDCO."  [*Id.*]  The letter reiterated much of the factual background and reservation of rights language found in the May 15, 2019 letter, again stating that Cincinnati Specialty reserved the rights to file a declaratory judgment action and intervene in the State

- 6 -

Court Action to determine whether, and to what extent, the insurer has a duty to defend or indemnify Brian Dodge or Central Kentucky Lodging. [*Id.* at 4-5.]

The July 6, 2020, reservation of rights letter to Reinhardt regarding Nathan Dodge was similar to the letter sent to Brian Dodge on the same date. [*See* Record No. 1-6.] Cincinnati Specialty agreed to defend Nathan Dodge under the relevant insurance policies' "Who is an Insured" provisions, but declined to defend him insofar as claims were alleged against him in his capacity as personnel of ABDCO and Advanced Lodging Solutions. [*Id.* at 3-4.] This letter reiterated much of the same factual background and reservation of rights language, repeating the specific reservation of the rights to bring a declaratory judgment action and to intervene in the State Court Action. [*Id.* at 4.]

The same day, counsel for Cincinnati Specialty sent a separate letter to Reinhardt regarding his other client, Advanced Lodging Solutions. [Record No. 1-7] This July 6, 2020. letter was similar to the other three letters discussed herein, but notably also stated:

> These Policies [of Central Kentucky Lodging] that were in effect on the date of the incident, January 5-6, 2019, do not include Advanced Lodging Solutions, LLC as a Named Insured, nor is Advanced Lodging Solutions, LLC an additional insured under these Policies. As such, CSU has no duty to defend or indemnify Advanced Lodging Solutions, LLC under these Policies.

[*Id.* at 3 (emphasis omitted).] The letter proceeded to reserve the rights to file a declaratory judgment action and intervene in the State Court Action to determine its obligations to Advanced Lodging Solutions, but Cincinnati Specialty declined to defend it in the underlying proceeding. [*Id.* at 4.]

Cincinnati Specialty filed this action seeking declaratory relief on April 23, 2021. [Record No. 1] At the time this case was filed, the operative complaint in the State Court Action was the Estates' Fourth Amended Complaint. [*See* Record No. 1-1.] The Fourth

Amended Complaint did not allege claims for declaratory relief or assert any claims against Cincinnati Specialty.  [*See id.*]

The Estates subsequently obtained leave to file a Fifth Amended Complaint on June 25, 2021, naming Cincinnati Specialty as a defendant.  [Record No. 18-2, ¶ 85]  The Fifth Amended Complaint alleges that the General Policy contains a form CG00010413 liquor liability exclusion for various scenarios relating to the provision and consumption of alcohol, but contends that Endorsement CG21500413 of the General Policy amends and replaces the exclusion.  [*See id.* at ¶¶ 170-73.]  According to the Abbas Estates, the amended liquor liability exclusion applies only to entities that:

(1)  Manufacture, sell or distribute alcoholic beverages;
(2)  Serve or furnish alcoholic beverages for a charge whether or not such activity:
    (a) Requires a license;
    (b) Is for the purpose of financial gain or livelihood;
(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or
(4) Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

[*Id.* at ¶ 174; *see also* Record No. 1-2, p. 46.]  The Estates argue that, for the purposes of *determining insurance coverage*, the exclusion does not apply because "neither CKL [*i.e.*, Central Kentucky Lodging] nor the DODGE Defendants manufactured, sold, distributed, or otherwise furnished alcohol to Bailey while engaged in business on behalf of CKL."  [*Id.* at ¶ 175.]  This assertion is qualified, however, by the claim that "for the purposes of *assessing liability* in this case, Plaintiffs allege that CKL and DODGE Defendants were in the business of selling alcohol, even if they did not directly sell any alcohol."  [*See id.* at ¶ 177 (emphasis added).]

Alternatively, the Estates allege that the language of the liquor liability exclusion as amended is ambiguous and should be construed against Cincinnati Specialty as the drafter. [*Id.* at ¶¶ 179-180.]  The Estates also allege that the form CG00010413 exclusion for expected or intended injury does not apply because the damages caused by ABDCO's service of Bailey were not expected or intentional.  [*Id.* at ¶¶ 181-82.]  The Estates claim that the Excess Policy "follows the provisions, exclusions and limitations set forth in the underlying General Policy and will pay sums that the insured becomes legally obligated to pay as damages in excess of the amounts provided for under the General Policy" up to the $2,000,000.00 per occurrence limit.  [*Id.* at ¶ 168.]

The eighteen counts alleged in the Fifth Amended Complaint can be summarized as follows: negligence against the Estate of Joey Lee Bailey (Count I); breaches of statutory duties of care under KRS §§ 413.241(2), 244.080(2), and 244.120(2)(d), breach of a duty of care imposed by Georgetown City Ordinance § 2.7-5.8, breach of an unspecified statutory duty of care, breach of a common law duty of care, and "Equitable Tolling – Fraudulent Concealment" against various entities and individuals associated with the Georgetown Roosters franchise (Counts II through VIII); breach of a common law duty of care against JIMALOU, Inc. (Count IX); breaches of statutory duties of care under KRS §§ 413.241(2), 244.080(2), and 244.120(2)(d), breach of a duty of care imposed by Fayette County Ordinance 282-2005 § 3-28, and breach of a common law duty of care against ABDCO, Central Kentucky Lodging, Brian Dodge, and Nathan Dodge (Counts X through XIII and Count XV); breach of unspecified statutory duties of care against Brian and Nathan Dodge (Count XIV); a claim under the Kentucky Uniform Voidable Transactions Act, KRS § 378A.005, *et seq.*, to, *inter alia*, set aside the transfers of assets (allegedly facilitated by the Dodges) among Central

Kentucky Lodging, ABDCO, Advanced Lodging Solutions, and Kennedy's Hospitality such that the Estates' claims may be satisfied (Count XVI); a declaratory judgment claim regarding Cincinnati Specialty's insurance policy obligations (Count XVII); and a declaratory judgment claim requesting that KRS § 413.241 be found unconstitutional under the Kentucky Constitution to the extent it precludes recovery of punitive damages (Count XVIII). [*Id.* at ¶¶ 183-342.]

> As particularly relevant here, in Count XVII, the Fifth Amended Complaint seeks:
>
> a declaration from this court concerning the rights, liabilities, duties, and obligations CINCINNATI INSURANCE has to indemnify CKL, B.R. DODGE, and N.B. DODGE with regard to any and all allegations set forth by Plaintiffs herein, including, but not necessarily limited to a determination that there is coverage under both the General Policy and Excess Policy for any damages that these Defendants may become liable for related to the claims asserted by Plaintiffs herein. Further, Plaintiffs seek a declaration that the limits of liability coverages for all of Plaintiffs' allegations, combined for both the General Policy and Excess Policy, amount to $3,000,000.

[*Id.* at ¶ 320.]   In addition to compensatory damages, the Estates seek punitive damages against ABDCO, Central Kentucky Lodging, Advanced Lodging Solutions, Kennedy's Hospitality, and the Dodges. [*Id.* at pp. 57-58.]

In this case, Cincinnati Specialty seeks a declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure regarding "the rights, duties and obligations of CSU pursuant to," the General and Excess Policies, "and [a] specific[] declar[ation] that CSU is not obligated to defend or indemnify Central Kentucky Lodging, Advanced Lodging Solutions, Nathan Dodge, and/or Brian Dodge for the claims asserted against them." [Record No. 1, ¶ 17]   The Complaint cites various provisions of the insurance policies without specific explanation regarding Cincinnati Specialty's position regarding the interpretation of such policies. [*See id.* at pp. 4-9.]   Based on the provisions cited therein, as well as the insurance

company's arguments in its response to the pending motion [Record No. 21, p. 5], it appears that Cincinnati Specialty seeks, at least, a clarification of the applicability of the liquor liability exclusion and amendment thereto discussed above, a ruling on the "the validity of the exclusion for punitive damages" found in CSGA 4010213 of the General Policy and CSCX1000213 of the Excess Policy, a finding that "fraud is not covered" by the policies, and a ruling on "the excess coverage's follow-form nature" in relation to the underlying General Policy.

Cincinnati Specialty has joined Central Kentucky Lodging, Advanced Lodging Solutions, Brian Dodge, and Nathan Dodge, as well as the Abbas Estates, as defendants in this declaratory judgment action. [*See* Record No. 1.] The Abbas Estates filed the instant motion to dismiss on July 2, 2021, arguing that the Court should decline to exercise jurisdiction over this matter. Alternatively, it asserts that Cincinnati Specialty's reservation of rights letters waived its right to file a declaratory judgment action in federal court. [Record Nos. 18 and 18-1] Central Kentucky Lodging, Brian Dodge, and Nathan Dodge filed a response in support of the Estates' motion to dismiss on July 23, 2021,[1] while Cincinnati Specialty responded in opposition on the same date. [Record Nos. 20 and 21] The Abbas Estates filed a reply on August 5, 2021.

## II.

"Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). The United States

---

[1] Although Cincinnati Specialty named Advanced Lodging Solutions as a defendant in this action, it has not entered an appearance.

Court of Appeals for the Sixth Circuit has cautioned that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) (internal quotation marks omitted)).

Still, there is no "per se rule against exercising jurisdiction in actions involving insurance coverage questions." *Id.* at 812-13 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 (6th Cir. 1986)). Instead, courts apply the five-factor test set forth in *Grand Trunk* to determine whether the exercise of federal jurisdiction is appropriate. These factors include:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

746 F.2d at 326. The factors "direct the district court to consider three things: efficiency, fairness, and federalism." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citation omitted).

### A. Settling the Controversy and Clarifying the Legal Relations in Issue

The first two factors are related and often considered in tandem. *E.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (citation omitted). Two lines of cases have developed regarding these two factors in the context of insurance company declaratory judgment actions to determine policy liability. *Hoey*, 773 F.3d at 760 (citing *Flowers*, 513 F.3d at 555). "One . . . holds that these two factors relate to whether the declaratory judgment would settle the *underlying* state-court controversy—that is, the tort action brought by the

- 12 -

injured party against the insured—or would at least clarify the legal relationship between the parties in the underlying state-court controversy." *Id.* (emphasis in original) (citing *Flowers*, 513 F.3d at 555-58). "The other line of cases directs the district court to focus on the controversy between the parties in the declaratory-judgment action—that is, between the insurer and the insured." *Id.* (citing *Flowers*, 513 F.3d at 555-58).

The Sixth Circuit has "suggested that the split [of authority] might reflect both 'competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible,' as well as differences in the factual circumstances presented by different cases." *Id.* (citing *Flowers*, 513 F.3d at 555-56). Thus, the applicability of one line of cases over the other may depend on whether the federal declaratory action involves "fact-based question[s] of state law" or "a purely legal dispute." *Banks Eng'g, Inc. v. Nationwide Mut. Ins. Co.*, No. 5:21-107-DCR, 2021 WL 2382520, at *4 (E.D. Ky. June 10, 2021); *see also*, *e.g.*, *Nationwide Mut. Ins. Co. v. VFW of the United States*, NO. 16-146-DLB, 2017 WL 1147454, at *4 (E.D. Ky. March 27, 2017) (first factor weighed against exercising jurisdiction where dispute "raise[d] fact-based questions of state law, and there [was] a strong possibility that many of the same factual questions would also be addressed in the underlying state court action.").

Cincinnati Specialty contends that multiple issues can be determined as a matter of law without wading into factual considerations arising in the State Court Action, including:

> the applicability of the "Amendment of Liquor Liability Exclusion" Endorsement under the allegations of the Abbas Estates' Complaints, the validity of the exclusion for punitive damages, that fraud is not covered under CSU's Policy, [] the excess coverage's follow-form nature in the policy CSU issued to CKL . . . [the plaintiff's] position that ALS was not a CSU insured at the time of the accident . . . .

[Record No. 21, p. 5]  But Central Kentucky Lodging and the Dodges argue that several related fact-based issues of state law presented in the State Court Action must be resolved prior to a determination of coverage, including, as notable here: (1)  whether Central Kentucky Lodging and ABDCO were joint venturers, and if so, what the liability of the parties would be; (2) whether Central Kentucky Lodging and ABDCO were actually a single business enterprise; (3) whether the assets, expenses and management of Central Kentucky Lodging and ABDCO were commingled or shared; and (4) whether there were fraudulent transfers in violation of the Kentucky Uniform Voidable Transfers Act.  [Record No. 20, pp. 4-5]

Both arguments have merit.  On the one hand, several issues presented in this case could likely be determined in a vacuum without addressing underlying facts.  These include the exclusion for punitive damages and the relationship between the General Policy and Excess Policy.

Conversely, Cincinnati Specialty ultimately seeks declaratory relief regarding its obligations to defend or indemnify Central Kentucky Lodging, Advanced Lodging Solutions, and the Dodges.  Resolution of this issue would require consideration of the legal status of these entities and individuals in relation to ABDCO, the entity known as Horseshoes KY Grill & Saloon that served Bailey on the evening in question.  This is particularly relevant given the Estates' contention in the Fifth Amended Complaint that the liquor liability exclusion is inapplicable because Central Kentucky Lodging and the Dodges did not serve Bailey.   Such considerations are fact-based questions of state law that reside at the heart of the state court action.  Moreover, Cincinnati Specialty seeks declaratory relief regarding coverage where fraud is involved.  While this request could possibly be considered in a vacuum, any actual

- 14 -

determination of Cincinnati Specialty's rights and obligations would tread on the fraudulent transfer issues presented in the State Court Action.

The fact-based questions of state law already presented in the State Court Action would likely predominate over any purely legal questions regarding General and Excess Policy coverage if the Court actually determines the rights and obligations of Cincinnati Specialty under the policies.  After all, Cincinnati Specialty insured Central Kentucky Lodging, which would not seem to be implicated in any proceeding if it is not, in fact, legally bound up with ABDCO through the Dodges' ownership and/or management of the two entities.  "Obviously, this is undesirable as it constitutes an inefficient use of judicial resources and creates the potential for inconsistent results."  *Banks, Eng'g, Inc.*, 2021 WL 2382520, at \*4; *see also J & L Lumber Co., Inc.*, 373 F.3d at 813-814 (concluding that "[t]he declaratory judgment action in federal court could serve no useful purpose"  where "[t]he federal court could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or the federal court could disagree with the state court, resulting in inconsistent judgments.").

Cincinnati Specialty acknowledges that its lawsuit will not actually resolve the underlying dispute between the Abbas Estates and the alleged tortfeasors, *i.e.*, the dram shop and fraudulent transfer claims alleged against the Dodges and related entities.  [Record No. 21, p. 5]  This is undoubtedly true inasmuch as this Court will be unable to determine, at least, liability or the proper remedies for such claims.  And needless to say, this action will not settle the claims alleged in the State Court Action against the Estate of Joey Lee Bailey, the Roosters-related defendants, and JIMALOU, Inc., let alone the declaratory judgment count regarding the availability of punitive damages in dram shop litigation.

- 15 -

The Court finds that the "the first two factors weigh against accepting jurisdiction because the Court could, at best, settle [] very limited issue[s] within a much broader, ongoing dispute." *Auto–Owners Ins. Co. v. King*, No. 3:10–59–DCR, 2011 WL 1899233, at *3 (E.D. Ky. May 19, 2011). Further, the risk of wading into fact-based questions of state law that are before the state court (and have been for over two years) is significant. On balance, the first two factors weigh against exercising jurisdiction.

### B. Procedural Fencing[2] and the Race to Res Judicata

"The third factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (internal quotation marks omitted) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record" and will give plaintiffs the "the benefit of the doubt that no improper motive fueled the filing of [the] action" where the federal declaratory action is filed "after the state court litigation has begun." *Id.* (alteration in original) (citations and internal quotation marks omitted). "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986)).

---

[2] "Procedural fencing" "has come to encompass a range of tactics that courts regard as unfair or unseemly." *Hoey*, 773 F.3d at 761 (citation omitted). A race to *res judicata* in a separate forum is an example of such an undesirable procedural tactic. *Id.*

The traditional concerns relating to the third factor are not present here. Indeed, Cincinnati Specialty filed this action approximately two years after the State Court Action began and it sent the initial reservation of rights letter to Central Kentucky Lodging. And the procedural posture of this case looks considerably similar to that of *Flowers*, in which the Sixth Circuit found there to be "no evidence in the record that Scottsdale's [*i.e.*, the insurance company] action was motivated by procedural fencing." 513 F.3d at 558. The *Flowers* court observed that:

> Scottsdale instituted this action several years after the state court proceedings began. Moreover, as Scottsdale was not a party to the state court action, the issue of its insurance coverage of Flowers was not before the state court. Thus, Scottsdale's attempt to clarify its legal obligations to Flowers in federal court cannot be construed as an attempt to create a race to judgment. While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue.

*Id.* Cincinnati Specialty was not a party to the State Court Action prior to instituting this proceeding on April 23, 2021, inasmuch as the declaratory judgment claim regarding its coverage was not brought by the Abbas Estates until leave to file the Fifth Amended Complaint was obtained on June 25, 2021. It is of no consequence that such a claim may have arisen in the State Court Action independent of the insurer's decision to bring the present case.

Notwithstanding this point, the Abbas Estates contend that Cincinnati Specialty has engaged in forum shopping or general procedural fencing, asserting that the insurer "for years, has conceded that state court was the proper forum, as evidenced by it providing a defense for

- 17 -

its insureds under the language of its RORs."[3]  [Record No. 23, p. 10]  This contention alludes

to the separate argument that the case should be dismissed because the language of Cincinnati

Specialty's reservation of rights letters did not reserve the insurer's right to file a declaratory

action in federal court.  [*See* Record Nos. 18-1, pp. 10-11 and 20, p. 4]  The argument, which

is raised as an alternative to dismissal under *Grand Trunk*, generally proceeds that certain

language ("the Court" and "this Lawsuit") found in the reservation of rights letters' paragraphs

concerning declaratory judgment actions or intervention binds the insurer to pursuing remedies

in the state court forum.  [*E.g.*, Record No. 18-1, pp. 10-11.]

The argument is somewhat difficult to follow because the Estates, at times, assert both

that: (1) the language limits the insurer to intervening in the State Court Action *or* filing a

separate declaratory judgment action in Fayette Circuit Court [*e.g.*, Record No. 18-1, pp.

10-11]; and (2) the language *only* permits Cincinnati Specialty to intervene in the State Court

Action [Record No. 23, p. 5].  Moreover, no party has cited any authority for the proposition

that similar language waives an insurer's ability to select the forum where it has clearly

reserved the right to challenge its obligations to insureds by intervening in an action or filing

a separate declaratory action.  Further, contrary to the occasional assertions of the Estates, the

relevant paragraphs plainly reserve the insurer's rights to *either* file a separate declaratory

action or intervene in the State Court Action.

But the Court need not decide the waiver argument in the context of a *Grand Trunk*

analysis.  Suffice it to say that the language of these paragraphs provided clear notice that the

---

[3]  Central Kentucky Lodging and the Dodges acknowledge in their response in support of the
motion to dismiss that the insurer "may not have an improper motive" but contend that state
court is the proper forum to resolve the factual issues underlying the declaratory action.
[Record No. 20, p. 7]

insurer may file a separate declaratory action without explicitly stating that such an action would be filed in Fayette Circuit Court. Accordingly, there is no suggestion of "procedural fencing" that might shift the third factor in favor of the parties seeking dismissal where the case otherwise bears no hallmarks of improper procedural motives.

That said, the Sixth Circuit has found that the third factor "should be afforded little weight in cases where, as here, there is no evidence of procedural fencing." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 439 (6th Cir. 2018) (citing *Travelers Indem. Co. v. Bowling Green Prof'l. Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)). Thus, this factor will be afforded little weight.

### C. Friction Between Federal and State Courts

"[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' . . . if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (internal citation omitted) (second alteration in original) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). "However, the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Flowers*, 513 F.3d at 560 (internal quotation marks omitted) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 2008)). Thus, courts consider the following three sub-factors when assessing the fourth *Grand Trunk* factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public

policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (quoting *J&L Lumber Co., Inc.*, 373 F.3d at 814-15).

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* While issues of insurance policy interpretation may be insulated from factual matters at issue in underlying state court cases, "sometimes resolution of the issue[s] raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (citing *Bowling Green Prof'l. Assocs., PLC*, 495 F.3d at 272).

As noted above, this consideration also bears on the analysis of the first two *Grand Trunk* factors. *See, e.g.*, *J & L Lumber Co., Inc.*, 373 F.3d at 813-814; *Banks Eng'g, Inc.*, 2021 WL 2382520, at *4; *VFW of the United States*, 2017 WL 1147454, at *4. And for the reasons set forth above, namely, that coverage may hinge on the relevant parties' relationship to ABDCO and issues pertaining to fraudulent transfers, this sub-factor weighs in favor of declining jurisdiction.

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. "Sixth Circuit precedent is clear that Kentucky courts are better situated than this Court to adjudicate matters that revolve around state regulated insurance contracts." *Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764, 773 (E.D. Ky. 2020) (citing *Bowling Green Prof'l. Assocs., PLC*, 495 F.3d at 272; *J & L Lumber Co., Inc.*, 373 F.3d at 815-16). This sub-factor may favor declining jurisdiction even where the insurer is not a named party in the underlying state court action and the insurance coverage has not been placed at issue in state court. *See id.* Further,

- 20 -

the fact that "discovery has been conducted" in an underlying state court action supports a decision to decline to exercise jurisdiction.  *See King*, 2011 WL 1899233, at *5.

In the present action, the issues presented by Cincinnati Specialty involve interpretation of state-regulated insurance contracts, as well as underlying fact-based state law matters pertinent to coverage.  The State Court Action in which discovery has been conducted was filed nearly two-and-a-half years ago.  Cincinnati Specialty, which had previously been involved in the case by defending Central Kentucky Lodging and the Dodges, is now a party to that proceeding.  The coverage afforded by the General and Excess Policies has been placed at issue in the Fifth Amended Complaint.  This sub-factor favors the Estates position.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561.  "Interpretation of Kentucky insurance contracts is guided by state public policy." *Id.* (citing *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005)). Even where there are "clear indications from the Kentucky courts" how issues of insurance contract interpretation should be resolved, this sub-factor may support declining jurisdiction. *Id.*

Cincinnati Specialty claims that "a determination as to [its] duties to defend and/or indemnify in this matter do not implicate important state policies."  [Record No. 21, pp. 8-9] But the primary issue in this case is interpretation of the General and Excess Policies, which implicates an important Kentucky public policy.  And as noted, there are fact-based state law issues concerning entity status and fraudulent transfers that may affect coverage afforded by those policies.   The third sub-factor weighs heavily in favor of declining to exercise jurisdiction.

- 21 -

All three sub-factors favor declining to exercise jurisdiction.  Accordingly, the fourth *Grand Trunk* factor assessing friction between federal and state courts supports the Estates' motion for dismissal.

### D.  Availability of an Alternative Remedy

The final *Grand Trunk* factor addresses alternative remedies.  "A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'"  *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326).  The Sixth Circuit has recognized that insurers have alternative remedies available in the form of declaratory judgment claims in state court under KRS § 418.040 as well as indemnity actions following the conclusion of underlying state court actions.  *See id.*  But the availability of such alternatives does not necessarily make them better or more effective than federal declaratory actions.  Rather, the "inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff."  *Id.*

Looking at the facts and procedural posture underlying this proceeding and the State Court Action, remedies sought in state court would clearly be better and more effective.  Cincinnati Specialty is not at fault for filing a federal declaratory action.  As described in the discussion of the third factor, it had every right to do so despite the pendency of the State Court Action.  But the insurance company is now a party to that proceeding, and the operative Fifth Amended Complaint largely appears to seek declaratory relief akin to that sought in this case.

The Court notes that the declaratory relief sought in Count XVII of the Fifth Amended Complaint differs from the relief sought in the Complaint of this case in that it does not expressly request a declaration concerning Advanced Lodging Solutions.  [*Compare* Record No. 1, ¶¶ 15-17, *with* Record No. 18-2, ¶¶ 316-20.]  Still, this point alone does not sway the

fifth factor in favor of exercising jurisdiction. For one, the issue does not appear to be one of particular concern to Cincinnati Specialty inasmuch as the insurer does not raise it. [*See* Record No. 21.] And it is not unusual for courts to reason that seeking declaratory relief in state court is preferable to a federal action requesting the same relief even where the insurance company is not formally joined to the underlying state court proceeding. *See*, *e.g.*, *Mass. Bay Ins. Co.*, 759 F. App'x at 441 (concluding that the insurance company could have filed a state court declaratory judgment action which may have been consolidated with the underlying state court action); *Trip Cat, LLC*, 444 F. Supp. 3d at 774 ("Plaintiff [*i.e.*, the insurance company] could file a declaratory judgment action in state court and petition that court to combine the two actions, which the Court finds would be a better alternative."); *cf. Flowers*, 513 F.3d at 562 (determining that a Kentucky declaratory action, which might have been consolidated with the underlying state court litigation, "would have been better" but finding no abuse of discretion where the district court reached a contrary conclusion). No party has indicated that Cincinnati Specialty would be barred from seeking declaratory relief regarding Advanced Lodging Solutions in the State Court Action or filing a separate lawsuit in Fayette Circuit Court that could be consolidated with the State Court Action.

Moreover, the State Court Action involves multiple parties associated with the Estate of Joey Lee Bailey, the Georgetown Roosters franchise, and JIMALOU, Inc., none of which are before the Court. [*See* Record No. 18-2.] It is difficult to conclude whether the relief sought in this action would substantively affect these parties' positions in the State Court

Action,[4] but it is patently evident that significant and "confusing problems of scheduling . . . [and] orderly presentation of fact issues . . . [would be] created" for all parties if the Court were to exercise jurisdiction.   *J & L Lumber Co., Inc.*, 373 F.3d at 812 (internal quotation marks omitted) (quoting *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463); *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 791 (E.D. Ky. 2008) (applying this reasoning to the fifth *Grand Trunk* factor).  For these reasons, the fifth *Grand Trunk* factor weighs in favor of declining to exercise jurisdiction.

### E.  Balancing the *Grand Trunk* Factors

The Sixth Circuit has not prescribed an exact method of balancing the *Grand Trunk* factors.  *See Flowers*, 513 F.3d at 563.  "In deciding how to balance these factors, district courts must rely on the 'unique and substantial' discretion granted to them by the Declaratory Judgment Act."  *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 791 (quoting *Flowers*, 513 F.3d at 563).

Four out of five factors significantly weigh in favor of declining to exercise jurisdiction. Only the third factor, which is afforded little weight in the absence of evidence of procedural fencing or a race to res judicata, supports the exercise of jurisdiction.  At base, the declaratory

---

[4]  The Abbas Estates believe that other parties in the State Court Action have interests in this proceeding.  [Record No. 18-1, pp. 19-20]  For example, parties associated with the Roosters franchise have filed a third-party complaint in the State Court Action seeking declaratory relief against a different insurer, Grange Insurance Co.  [Record No. 18-1, pp. 5-6]  The Estates claim that "Grange has an interest in this Court ruling against CSU and declaring that its insurance policies cover CKL and the Dodge defendants, thus minimizing the exposure to its own insured, the Roosters defendants."  [Record No. 18-1, p. 19 n. 90]  The issue of this proceeding's potential impact parties not joined to this action is not fully developed in the briefs concerning the motion to dismiss.  And inasmuch as these parties are not before the Court, the undersigned declines to offer any conclusion on the matter apart from the observation that exercising jurisdiction over Cincinnati Specialty's claim would considerably complicate scheduling and the presentation of issues in both cases.

relief sought in this action involves factual considerations at the heart of the State Court Action. Moreover, the state court is better suited to consider the factual and legal questions presented in this proceeding.  Finally, exercising jurisdiction would significantly complicate what is already complex litigation in terms of scheduling and the presentation of issues.  Thus, the *Grand Trunk* factors support dismissal.

III.

The *Grand Trunk* factors counsel against exercising jurisdiction over this matter.  As a result. the Abbas Estates' motion to dismiss will be granted.  Because the Court will dismiss the case on these grounds, it need not determine whether Cincinnati Specialty waived its right to file a declaratory judgment action in federal court.  Accordingly, it is hereby

**ORDERED** as follows:

1.      The Abbas Estates' motion to dismiss [Record No. 18] is **GRANTED**.

2.      Plaintiff Cincinnati Specialty Underwriters Insurance Company's claim for declaratory relief is **DISMISSED**, without prejudice.

Dated:  October 4, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 25 -